UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES I. WYNN, SR.,

                Plaintiff,                22-CV-6362 (CJS)

vs

PHILLIPS LYTLE, LLP, RICHARD
EVANS, ESQ., CHESWOLD (TL) LLC,
LORENZO NAPOLITANO, ESQ.
REFEREE, MONROE COUNTY
DIRECTOR OF FINANCE, WILLIAM
FANT, GERDA B. CASSARA,
WILLIAM RIETH, ESQ., MARK
UPDEGRAFF aka WARD REDUX,
TOWER DBW II TRUST 2012-1,
PHH MORTGAGE CORPORATION
Doing business as PHH Mortgage
Services s/h/a PHH Mortgage
Services,

                Defendants.
_____

## INTRODUCTION

James I. Wynn, Sr. ("Plaintiff"), proceeding *pro se*, filed this action alleging that he was the victim of a fraudulent real estate foreclosure. Now before the Court are the following motions: A motion to dismiss by Richard Evans and Phillips Lytle, LLP (ECF No. 6); a motion to dismiss by Lorenzo Napolitano (ECF No. 8); a motion to dismiss by Mark Updegraff (ECF No. 15); a motion to dismiss by Cheswold (TL) LLC and Tower DBW II Trust 2012-1 (ECF No. 29); and a motion to dismiss by William Fant and PHH Mortgage Corporation.  For the reasons discussed below, the motions to dismiss are granted, the remaining claims are dismissed *sua sponte*, this action is dismissed with prejudice, and Plaintiff is barred and enjoined from filing further actions or claims involving the subject matter of this lawsuit without the Court's permission.

BACKGROUND

On August 22, 2022, James I. Wynn, Sr. ("Plaintiff"), proceeding *pro se*, filed four lawsuits and paid the filing fees. The four actions were: 22-CV-6352 CJS, *Wynn v. Larimer*, et al.; 22-CV-6353 CJS, *Wynn v. Cassara, et al*.; 22-CV-6354 CJS, *Wynn v. Cassara, et al*.; and 22-CV-6355, *Wynn v. Larimer, et al*. Four days later, on August 26, 2022, Plaintiff, again proceeding *pro se*, filed the instant action and paid the filing fee.

All five actions involve the same allegation, namely, that Plaintiff was cheated out of real estate by a large group of racist conspirators. The specific parcels of real estate involved were 3840 Lake Avenue and 38-40 Elmdorf Avenue, both in the City of Rochester. Both parcels became encumbered by tax liens, due to Plaintiff's failure to pay property taxes, and, following a failed attempt at Chapter 13 Bankruptcy, were eventually foreclosed upon by the lienholders.[1]

However, Plaintiff, who happens to be black, maintains that both foreclosures occurred as a result of a racist conspiracy against him by lenders, attorneys, state and federal judges, the Chapter 13 Bankruptcy Trustee, the court-appointed foreclosure referees, the purchaser at the foreclosure sale,[2] the Mayor of Rochester, and the County Executive of Monroe County.

The Court has now dismissed the four actions filed by Plaintiff on August 22, 2022, with prejudice, after finding that the claims were patently frivolous and vexatious. Also in connection with the dismissal of those action, the Court imposed a filing sanction on Plaintiff, barring and enjoining him from filing any additional claims or actions relating to the same subject matter without first obtaining the Court's permission.

---

[1] *See, generally, Wynn v. Phillips Lytle LLP, et al.*, 22-CV-6352 (CJS), Decision and Order dated February 22, 2023 (Discussing how Plaintiff lost the property through foreclosure after he failed to pay his property taxes and then failed to abide by a Chapter 13 Bankruptcy Plan.). A judgment of foreclosure and sale on 38-40 Elmdorf Avenue was filed on November 18, 2022, by New York State Supreme Court, Monroe County. *See*, ECF No. 29-13. In granting that judgment, the Supreme Court rejected the same arguments that Plaintiff is attempting to raise in this action. *Id.*

[2] The Court is referring to Mark Updegraff, who purchased 3840 Lake Avenue at the foreclosure sale. It is unclear to the Court who, if anyone, purchased 38-40 Elmdorf Avenue.

The instant action essentially restates the same claims as the already-dismissed actions, but sues a slightly different configuration of defendants. Although, Plaintiff also sued some of the defendants in this action in the prior actions. More specifically, Plaintiff previously sued defendants Phillips Lytle, LLP ("Phillips Lytle"), Gerda Cassara ("Cassara"), Cheswold (TL) LLC ("Cheswold"), William Rieth ("Rieth"), Mark Updegraff ("Updegraff"), Tower DBW II Trust 20212-1 ("Tower"), and U.S. Bankruptcy Judge Paul Warren ("Judge Warren"), in one or more of the prior actions.

In any event, the relationship of the defendants to Plaintiff may be briefly stated as follows: Cassara held a mortgage on 3840 Lake Avenue; Tower was a party to the tax-lien foreclosure action on 3840 Lake Avenue; Cheswold was the plaintiff in the tax-lien foreclosure action on 38-40 Elmdorf Avenue; Phillips Lytle represented Tower and Cheswold in the foreclosure actions; Richard Evans ("Evans") is a member of the Phillips Lytle firm; Rieth represented Plaintiff in Bankruptcy Court; Judge Warren presided over Plaintiff's bankruptcy action; Updegraff/Ward Redux purchased 3840 Lake Avenue at the foreclosure sale; Supreme Court Justice Thomas Moran ("Justice Moran") and Supreme Court Justice Sam Valleriani ("Justice Valleriani") each presided over some aspect of the foreclosure action on 38-40 Elmdorf Avenue; Lorenzo Napolitano ("Napolitano") was the court-appointed referee to conduct the foreclosure sale on 38-40 Elmdorf Avenue; and William Fant ("Fant") and PHH Mortgage Services ("PHH") serviced a reverse-mortgage loan on Plaintiff's residence, 7 Kencrest Circle, Rochester, New York. The nature of the alleged involvement of defendant "Monroe County Director of Finance" is unclear.

The instant Complaint essentially mirrors the Complaints in the prior actions, which the Court discussed in its Decisions and Orders dismissing those actions. The reader is presumed to be familiar with those Decisions and Orders, which the Court incorporates by reference herein. It is sufficient to observe that, once again, Plaintiff baldly asserts that everyone involved in the state-court mortgage foreclosure actions, and in his bankruptcy proceedings, were part of the

alleged racist conspiracy against him.  Plaintiff alleges that, motivated by racial animus, the conspirators violated his federal civil rights by taking his real estate, using fraudulent foreclosure actions and fraudulent bankruptcy proceedings.  Although, once again, Plaintiff offers no facts plausibly suggesting that such a conspiracy existed or that the mortgage foreclosures or bankruptcy proceedings were actually fraudulent or otherwise improper.[3]

On October 18, 2022, Phillips Lytle and Evans moved to dismiss the Complaint for failure to state a claim, ECF No. 6, asserting, *inter alia*, that the pleading fails to plausibly state any actionable claim against them, that the claims are also barred by *res judicata* and/or collateral estoppel, and that the Court should enjoin Plaintiff from filing any further actions without first obtaining the Court's permission.[4]

Also on October 18, 2022, Napolitano filed a motion (ECF No. 8) to dismiss the Complaint as frivolous and as failing to state any actionable claim.  Napolitano indicates, in that regard, that although he was appointed as a referee in the foreclosure action on 38-40 Elmdorf Avenue, he had not, as of the date of the filing of this action, taken any action as referee.  (Napolitano filed his motion prior to New York State Supreme Court, Monroe County, entering the judgment of foreclosure on the Elmdorf Avenue property.).  Napolitano also requests that the Court enjoin Plaintiff from filing further actions against him without the Court's permission.

On November 8, 2022, Updegraff filed a motion (ECF No. 15) to dismiss the Complaint for failure to state a claim.  Updegraff contends that Plaintiff's Complaint purports to allege civil

---

[3] Instead, Plaintiff makes only bald assertions such as, "This was a regular fraudulent steal robbery. . . . Plaintiff doesn't believe if I was a 82 year old white man Judge Warren and the other conspirators would not have treated a white 82 year man as they treated me." [sic] (Complaint, ECF No. 1 at p. 8); see also, id. at p. 9 ("I tried to pay the tax that I owed that were legal but attorney William Rieth was not interested in tax he was motived by the little property that I had should belong to a white man.") [sic].  Plaintiff demands that the foreclosed properties be returned to him and that he be paid damages. See, id. at p. 9 ("Plaintiff respectfully requesting that my property at 3840 Lake Ave be returned lien free and also that my property at 38-40 Elmdorf be freed of all liens and that I be paid for the damages that I am requesting in my Complaint.").

[4] A supporting affirmation by Kevin English, Esq., a partner at Phillips Lytle, provides a thorough procedural history of the foreclosure actions on 3840 Lake Avenue and 38-40 Elmdorf Avenue, which are matters of public record.

rights violations under 42 U.S.C. § 1983, for which he cannot be liable since he is a private citizen who never acted under color of state law. More generally, Updegraff contends that Plaintiff's factual assertions about the foreclosure being the result of a racist conspiracy are not only entirely speculative, but also frivolous and demonstrably false, since Plaintiff admittedly failed to pay the property taxes on 3840 Lake Avenue.

On December 6, 2022, Cheswold and Tower filed a Motion to Dismiss the Complaint (ECF No. 29), asserting that they have not been served with the Summons and Complaint, that the Complaint fails to state any actionable claim against them, that the claims are barred by collateral estoppel and/or *res judicata*, and that the court should declare Plaintiff to be a vexatious litigant and enjoin him from filing further actions against them without the Court's permission.

On December 13, 2022, the Court *sua sponte* dismissed (ECF No. 31) the action as against Judge Warren and Justices Moran and Valleriani, based on absolute judicial immunity.

On December 14, 2022, Fant and PHH filed a Motion to Dismiss the Complaint (ECF No. 32) contending, *inter alia*, that they were never properly served, and that Plaintiff's Complaint fails to state any plausible claim as to them. Fant and PHH indicate, in that regard, that the Complaint does not plausibly allege that either of them violated any bankruptcy stay[5] or had any involvement in the foreclosure actions. Indeed, Fant and PHH assert that they only serviced a reverse-mortgage loan on Plaintiff's residence, 7 Kencrest Circle, and that they had no involvement with any conspiracy or with 3840 Lake Avenue or 38-40 Elmdorf Avenue.

On December 16, 2022, the Court issued an Order (ECF No. 33) directing Plaintiff to respond to the defendants' motions to dismiss by February 13, 2023. However, Plaintiff filed no opposition, leaving those motions unopposed. Instead, on January 10, 2023, Plaintiff filed an

---

[5] *See*, Fant & PHH Memo of Law, ECF No. 32-9 at p. 10 ("[T]here was no active Bankruptcy or Automatic stay in 2022, when Plaintiff claims the PHH Defendants violated a bankruptcy automatic stay.").

interlocutory appeal (ECF No. 34) of the Court's ruling dismissing Judge Warren and Justices Moran and Valleriani from the action. As far as the Court is aware, that appeal is still pending before the United States Court of Appeals for the Second Circuit.

## DISCUSSION

### Plaintiff's *Pro Se* Status

Since Petitioner is proceeding *pro se*, the Court must construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

### Plaintiff's Interlocutory Appeals Do Not Deprive the Court of Jurisdiction

Plaintiff presently has an interlocutory appeal pending before the Second Circuit, which begs the question whether the Court may properly decide the pending motions to dismiss. In that regard, the applicable law is clear:

> Normally, "[t]he filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). "The divestiture of jurisdiction rule is, however, not a *per se* rule. It is a judicially crafted rule rooted in the interest of judicial economy, designed 'to avoid confusion or waste of time resulting from having the same issues before two courts at the same time.'" *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) (quoting *United States v. Salerno*, 868 F.2d 524, 540 (2d Cir. 1989)). For example, the rule "does not apply where an appeal is frivolous [,] [n]or does it apply to untimely or otherwise defective appeals." *China Nat. Chartering Corp. v. Pactrans Air & Sea, Inc.*, 882 F. Supp.2d 579, 595 (S.D.N.Y. 2012) (citation omitted).

*Nunez-Polanco v. Capra*, No. 22-CV-4475 (LTS), 2023 WL 35208, at *2 (S.D.N.Y. Jan. 3, 2023) (emphasis added).

Here, the Court finds that divestiture of jurisdiction is not applicable, since Plaintiff's interlocutory appeal is frivolous. In that regard, Plaintiff is appealing this Court's dismissal of parties who clearly are entitled to absolute judicial immunity. Indeed, Plaintiff sued the judges

precisely because he disagrees with rulings that they made while presiding over his various legal actions. The Court therefore finds that it retains jurisdiction to decide the pending motions to dismiss.

Standards Applicable to Motions Under Rule 12(b)(6)

The movants seek dismissal of the Complaint pursuant to, *inter alia*, Fed. R. Civ. P. 12(b)(6)[6] and the standards for such an application are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To

---

[6] As discussed earlier, the movants raise additional arguments, such as that they were never properly served or that Plaintiff's claims are barred by *res judicata* and collateral estoppel. The Court has little doubt that movants are correct on those points. However, to keep things simple, the Court will focus on the fact that the Complaint fails to state any plausible claim.

survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

> When applying this "plausibility standard," the Court is guided by "two working principles":
>
> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted); *see also*, id. at 556 U.S. at 678 ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (citations and internal quotation marks omitted.)

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester,* No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp.3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal*'s pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal* ); *see also, In re Myovant Scis. Ltd. Section 16(b) Litig.*, 513 F. Supp. 3d 365, 373 (S.D.N.Y. 2021) ("The plaintiffs claim that discovery of the

8

relevant disclosure schedule may establish the portion of the purchase price allocated to Movant shares. . . . But "it is only by taking care to require allegations that reach the level suggesting [a plausible claim] that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence." *Twombly*, 550 U.S. at 559, 127 S.Ct. 1955. Because their unsupported speculation does not amount to a reasonable foundation, the plaintiffs cannot avoid dismissal by claiming that discovery will reveal a basis for their claim.").

It is well settled that "Complaints containing "only conclusory, vague, or general allegations that the defendants engaged in a conspiracy fail to state a claim." *Eldars v. State Univ. of New York at Albany*, No. 20-2693, 2021 WL 4699221, at *3 (2d Cir. Oct. 8, 2021) (quoting *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002)); *see also, Brady v. IGS Realty Co. L.P.*, No. 20-3512, 2021 WL 4302737, at *2 (2d Cir. Sept. 22, 2021) ("Brady's complaint . . . vaguely references a "civil conspiracy" without any facts supporting a meeting of the minds or alleging discriminatory animus.  His allegations of an effort by a state-court justice and both parties' attorneys to undermine his litigation do not state a claim for relief that is 'plausible on its face.' *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.").

<u>The Complaint Fails to Plausibly State Any Actionable Claim or Wrongdoing by Any Defendant</u>

Liberally construing Plaintiff's Complaint, it appears Plaintiff is attempting to plead a conspiracy to violate his civil rights under 42 U.S.C. § 1985(3).  "[A]n action will lie under § 1985(3) when a plaintiff is injured by a private conspiracy to interfere with his constitutional rights, so long as there is 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Colombrito v. Kelly*, 764 F.2d 122, 130 (2d Cir. 1985) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798 (1971)).

However, as the Court has already discussed at greater length in the Decisions and Orders dismissing Plaintiff's other actions involving these same matters, Plaintiff's factual allegations concerning the alleged conspiracy to steal his real estate are so utterly conclusory, speculative, paranoid and implausible as to be "clearly baseless" and "frivolous."[7] Plaintiff's allegation that the defendants conspired to steal his real estate based on a shared desire to racially discriminate against him is exactly the type of implausible claim that should be dismissed under the *Twombly* standard. The movants' applications are granted.

Additionally, for those same reasons, the Court also *sua sponte* dismisses the claims against the non-moving defendants, since, again, the action is clearly so frivolous, vexatious, and duplicative, that its ultimate dismissal is a foregone conclusion. In that regard, Federal District Courts do not generally conduct *sua sponte* reviews of actions in which the plaintiff has paid the filing fee. Nevertheless, "[a] district court has inherent authority to dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee. . . . An action is considered "frivolous" when: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Hariprasad v. New York*, 722 F. App'x 102, (Mem)–103 (2d Cir. May 17, 2018) (citations and internal quotation marks omitted).

<u>Leave to Amend is Denied</u>

Plaintiff never responded to Defendants' motions, and therefore he has not requested leave to amend in the event the Court were to grant Defendants' motions. Ordinarily, though, a court will not dismiss a *pro se* complaint without giving the plaintiff a chance to amend. Here,

---

[7] In the Bankruptcy Court Decision and Order issued by Judge Warren on July 27, 2017, mentioned earlier, Judge Warren observed that Plaintiff's "allegations of a conspiracy against him, while doubtlessly genuine in his eyes, have no basis in fact, and no evidence is offered in support." ECF No. 11-8 at p. 3; *see also, id*. at p. 5 (Referring to Plaintiff having alleged in the Bankruptcy Action "a grand conspiracy orchestrated to cause Mr. Wynn to lose title to his real estate holdings."); *id*. at p. 9 (Noting that Plaintiff had "doubled down on is assertion that the entire case has been a calculated, racially motivated conspiracy to deprive him of title to his real estate holdings.")).

however, the Court declines to give Plaintiff an opportunity to amend since it would be futile to do so for the reasons already discussed. Namely, Plaintiff's allegations are so conclusory, far-fetched, and unreasonable, that no amount of additional pleading would result in an actionable claim. *See, Hariprasad v. New York*, 722 F. App'x 102, 103 (2d Cir. May 17, 2018) ("Ordinarily, the district court should not dismiss a *pro se* plaintiff's complaint without granting leave to amend when a liberal reading of the complaint gives any indication that a valid claim might be stated. But, here, amendment would be futile, as there is no indication that Hariprasad might plead a valid claim[.]"); *see also, Maunsell v. WCAX TV*, 477 F. App'x 845, 846 (2d Cir. 2012) ("[Plaintiff's] conclusory assertions of statewide judicial bias were insufficient to state a claim for relief. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).").

The Requests for a Filing Sanction

Several of the movants have asked the Court to declare Plaintiff a vexatious litigant and enjoin him from filing any further actions or claims against them relating to the foreclosures of the properties at 3840 Lake Avenue and 38-40 Elmdorf Avenue without the Court's prior approval. The Court will grant that application since it is clear that Plaintiff is indeed a vexatious litigant who will not be deterred by any lesser sanction.[8]

In that regard, the Court notes that it already analyzed this same issue in its recent decision dismissing related case number 22-CV-6352 CJS, *Wynn v. Phillips Lytle, et al.*, ECF No. 35, at pp. 15-19. In that Decision and Order, which the Court incorporates herein by reference, the Court ordered Plaintiff to show cause in writing, within thirty days, why the Court

---

[8] The four actions filed on August 22, 2022, were just the latest salvo by Mr. Wynn, who, since 1992, has filed seventeen civil actions in this Court, along with fifteen bankruptcy-related appeals, many of which involve the same matters as the instant action. These figures are based on a search of the Court's CM/ECF electronic docketing system performed on May 17, 2023. A similar search of the Second Circuit's CM/ECF system indicates that Plaintiff is a party to thirty-two appeals filed since 2014.

should not impose a filing sanction on him, preventing him from filing any additional actions or claims relating to matters raised in that lawsuit, which are the same matters raised in this lawsuit. Plaintiff never responded to that Order, and the Court entered an order imposing such a filing sanction in that action. The Court grants the same relief here.

## CONCLUSION

Defendants' motions to dismiss (ECF Nos. 6, 8, 15, 29 & 32) are granted, the remaining claims are dismissed *sua sponte*, and the Complaint is dismissed with prejudice. The Clerk of the Court is directed to terminate this action.

Additionally, James I. Wynn, Sr., is hereby barred and enjoined from filing any additional actions or asserting any new claims in already pending actions, against the defendants in this action or anyone else, relating to the subject matter of this action, without first obtaining written approval from the undersigned. Specifically, such filing sanction applies to <u>any</u> action or claim relating to 3840 Lake Avenue or 38-40 Elmdorf Avenue in Rochester, New York. This includes, without limitation, any action or claim relating to the foreclosures of Plaintiff's ownership interests in such properties, or to Plaintiff's continuing claims of ownership in such properties, or to any related bankruptcy proceedings. The Clerk of the Court is directed to notify the undersigned if Plaintiff attempts to file such an action or claim.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438 (1962).

SO ORDERED.

DATED:	May 24, 2023
	Rochester, New York

	CHARLES J. SIRAGUSA
	United States District Judge